The first case for argument is 17-55146 Kripke v. U.S. Food and Drug Administration. And now we're ready for your argument. Thank you, Your Honor. My name is Gregory Weston, and I'm here on behalf of my client, Dr. Daniel Kripke, who is with me at the table. This case is of grave importance. It involves the lives of tens of thousands of Americans, and specifically those tens of thousands of Americans who die each year from acute intoxication with sleeping medication. And on top of those tens of thousands of Americans, it is a cofactor in up to 300,000 additional deaths each year in the United States. And what I mean by cofactor is one of the things the sleeping medications does is depresses the immune system and depresses respiration. In so doing, they cause existing diseases to become worse faster. For instance, sleeping pills cause a faster progression of skin cancer. It's ultimately the sun exposure that causes the initiation of the cancer, but the sleeping medication speeds up the cancer and is just one example of where it is a causal cofactor in people's deaths. Counsel, since your time is limited, let me just ask, what is your best authority for your claim that your client's personal economic interests are within the zone of interest of the FDA's citizen petition process? Oh, well, there's so many, but I think in terms of prospective business, it may be the Adirondack Constructors versus Pena, where you had a construction company saying, we would like to get rid of this affirmative action program because we are more likely to get future business. And they had standing in that case, even though there was no guarantee that even if they had won the case and had saw the elimination of this program, that they would continue to or they would actually get any business at all. And then on top of that, there are all the environmental cases done by companies opposing environmental regulations because we may be able to log less. So there's just really a lot of cases that say this prospective business that you think you will get if the government does what you allege it should do is sufficient for standing. We certainly allege other grounds for standing, but in that case, I think we're fairly well covered. Counsel, I'm not sure you are, so can I back up on that? Was standing briefed before the district court? Yes, it was. In fact, the focus of the briefing before the district court. Right. And counsel, did the district court rule on it? No, not at all. So what about our case law that says you can't assume standing, you can't assume jurisdiction? Well, I don't think the court needs to, and I think it would be helpful. Sorry, you don't think the court needs to? Are you talking about our court, district court? I think that this court is able to evaluate our standing allegations in our complaint because it was fully briefed. Is your answer, forgive me, but I just want to make sure we're communicating clearly. Is your answer that you think it is permissible for the district court to go forward and assume standing and then dismiss without deciding whether it had jurisdiction in the first instance? I don't have an opinion on that. I don't believe the district court did anything wrong in concluding we don't state a claim in dismissing it on what it thought was the simplest possible ground. Okay. And then as far as our court is concerned, is it your continued position that we ought to assume or rule on the question? My preference would be the court rule in our favor on the issue of standing. Okay. Thank you. And I should say I don't have an opinion on whether it's necessary. I think it most likely is a matter for the court's discretion. Okay. I think you've got some commentary authority you're going to have to deal with, but I don't want to interrupt your argument. Please proceed. Okay. Well, in terms of his standing, let me just outline some of the different standing allegations that he had, and I think even one of these would be sufficient. Another one that he makes is that he has done his own research, and this research should have been ordered by the FDA, but he has conducted it at his own expense. And then yet another one is that he has his own. Forgive me. Is there an allegation on that point that he's going to continue to conduct it and continue to incur expense? Is that why he has standing? I don't think he explicitly said, I will continue to do so, but I think that's a reasonable inference that he has done so in the past and he's continuing to do his research. And if we needed to make that more explicit, then we certainly could and would do so. However, I think it is a reasonable inference that he says he's doing the research now, he expects to do more in the future, and he's paid for it in the past. I think we can make that as an inference. So your concrete and particularized injury is economic, is that it? That is one of the concrete and particularized injuries, yes. All right. And then further, we think that he has an interest that is what we call vocational. He researches this and he believes the government is obligated to not just fund his own research, but to fund others' research that will then help his own. And that is one step that is not completely direct. However, it is more direct than we see in many other cases that have found standing. I thought in particular the Supreme Court's case, students challenging regulatory ones, involved many different steps before the actual injury occurred. That involved a challenge to railroad rate increases, and the students alleged that would have the indirect effect of discouraging recycling, and then that would have a further indirect effect of causing the environment to be less clean and less pleasurable for them to engage in outdoor recreation. And the Supreme Court said that is sufficient for standing to challenge a government agency permitting railroad rate increases that were general, not targeted towards recycling. Apart from economic injury, does your client have another type of injury? Well, he alleges also a prospective physical injury in the sense that these drugs don't affect only the people who take them, but they also affect everyone who is a pedestrian. And he alleges that he walks for miles every single day. So forgive me for interrupting, but I need to get your argument. Is your argument that he's also got a public safety concern and a personal safety concern in addition to an economic concern? Yes, that is correct. And he has described that in great detail in his complaint. He cites the studies that show that not only do sleeping pills cause an acute intoxication, so you shouldn't take them and then drive, but they also cause an impairment the next day in driving. And somewhat worse than alcohol impairment in that sense is that it's the next day, and also the same studies that show this next-day impairment show that people don't believe they have the next-day impairment. So there's this confidence that is unwarranted that people don't have the impairment. And he alleges again that it causes him a risk of future injury and causes his family as well that he would like to allege his harm. And if we look at those cases involving future injury, we have one that involved mad cow disease. And all the person said was, I eat beef regularly. And that was enough to say that the government's actions towards regulating mad cow disease, which kills very few people in the United States and involves very, very low risk, is sufficient for standing. Well, haven't you only identified really broad statutory missions to support your 760-1 claim? What are the specific legislative commands that support your claim? Well, of course, an agency shall proceed to conclude the matters before it entered at a reasonable time. We think that it has not proceeded at a reasonable time, given the great extent of the harm alleged, and that must be taken as true, in this. And we also don't agree with the district court that all of these tasks are complex and all of them require, we're at 32 months, and the FDA has not made a tentative ruling on any single one of these, a tentative regulation. And some of these, it shouldn't take any time at all, because a lot of his claims involve not asking the FDA for a final regulation, but asking the FDA to order the gathering of information. And just two instances, there's a pre-established REMS procedure that all drug companies are familiar with and have had to comply with that involves a formal collection of post-approval safety data. Another one is he wants enhanced reporting. That enhanced reporting means that each manufacturer, both name brand and generic, have to report details of their manufacture and importation to the government. That would have a direct benefit to him in that he does epidemiological research, and knowing how many people are taking this each year and having that information in as much accuracy and detail is a direct benefit to his livelihood. And if I could talk about one other sort of injury that he alleges, he alleges just in his everyday practice at the Scripps Clinic in La Jolla, he encounters patients who have this belief that sleeping pills are something that are appropriate for taking in the long term and the result of that is the FDA has not taken really any action to stop this very dangerous use of them or to, you know, let doctors know that. And the FDA doesn't always need to emphasize what the indications of medication are, but we have survey data that says 62 percent of older Americans who are taking sleeping pills have been taking it for more than three years. These were never tested for anything more than a few months, and the tests were on young healthy volunteers, not older Americans who may have other chronic diseases who are taking quite often other medication and who are taking it on a daily basis or a near daily basis for many years. So with that information that we allege the FDA is aware of, FDA nonetheless has not even taken the very simple step of sending a letter to doctors reminding them that the indication for this is short-term use only and there are studies that suggest using it off-label is very dangerous. Counsel, did you want to reserve some time for rebuttal? Yes, ma'am. Okay. Thank you for your argument. We'll hear from opposing counsel now. Good morning. May it please the Court. Ethan Davis for the Food and Drug Administration. The district court's order should be affirmed both because Dr. Kripke lacks standing and because his claims fail on the merits. Granting relief here would stretch standing beyond the breaking point, and granting relief for Dr. Kripke on the merits would just put him at the front of the line and move everyone else back a spot. I'll start with standing. Here at bottom, despite what you just heard from my colleague on the other side, Dr. Kripke is really asserting just a generalized interest in the subject matter of the field that he practices in. Forgive me for interrupting, but if we're going to start with standing, can we start with deciding whether we have to decide, and specifically whether the district court was correct in footnote 9 by assuming and essentially skipping standing, not making an affirmative ruling on it, and then going on to dismiss? Yes, Your Honor. I have a short answer to that question and then a longer answer. The short answer to that question is that we think that the court should decide standing first. This court? This court should decide standing first and then, if necessary, go on to the merits. The longer answer to that question is that it's a little bit complicated under this court's precedent. There are some APA cases out there that seem to treat this inquiry as jurisdictional, that is the unreasonable delay claim and the agency action unlawfully withheld claim, and the district court actually cited one of those cases in its opinion. It was San Luis food producers versus the United States. We think that case does hold that agency action unlawfully withheld or unreasonably delayed can present a jurisdictional issue in some circumstances. It's not directly on point here, and I don't think this court has directly addressed the situation here, whether this would present a jurisdictional issue. So with all that in mind, because we think the standing inquiry is so straightforward here, we think it would make more sense for the court to follow the cases that say that you're not allowed to assume standing and proceed to the merits and simply decide standing. We think it's easily resolved in our favor, but even if you resolve the standing inquiry the other way, it's still a straightforward inquiry under well-settled legal principles, unlike the jurisdictional question. I think you've answered my question. Okay. And on to standing, Your Honor. I think at bottom, Dr. Kripke asserts only a generalized interest in FDA regulating a certain class of drugs that he has spent his career working with. But a mere interest in a problem, no matter how longstanding the interest and no matter how qualified, is not sufficient by itself to establish standing. That's what the Supreme Court told us in Sierra Club versus Morton. Now, Dr. Kripke knows this, so he tries to create an economic interest in the outcome of this petition. But all of the economic interests that he cites are built on a chain of speculation that depends on the actions of third parties that are not before the court. So he speculates that if the FDA grants his petition, then there will be more, you know, doctors would react by writing fewer prescriptions for sleep medication. Doctors would instead refer patients to sleep specialists. Those referrals would go to Dr. Kripke, and then those patients would actually choose to go to Dr. Kripke. So that depends on at least five different levels of speculation, including the outcome of the petition, the way doctors not before the court would react, the way whether doctors would actually refer those patients to this specific physician and how those patients themselves would react. Well, counsel, what would he have to allege to fall within the zone of interest? I think he would need to allege some sort of personal exposure to the medications at issue, and I would point the court to that. Why isn't it sufficient that his exposure is that he's a care provider and this is his career? This subject is his career, studying them. But he also had a clinical practice, and so as a care provider, he's concerned about efficacy and also about patient safety. Why isn't that enough? Well, Your Honor, I think the problem is that he doesn't allege how this citizen petition will have any impact on what he does as a care provider. He doesn't know the outcome. But isn't that a fair inference? If his concern is that he's saying loudly and clearly he thinks these 10, I think they're 10, drugs aren't safe, and he's in the business. He's in the business of treating this type of patient. Why isn't that enough that he wants the FDA to take another look at these drugs? I think the cases say, Your Honor, that just a general interest in the subject matter, like an environmental organization. If I filed it, I might have a general interest in the subject matter because I'm not a patient. I don't take sleeping pills. I'm not in it. But this is his career. This is what he studies, and this is the patient population that he treats. That's what would be helpful for me if you would respond to that. Sure, Your Honor. You could say the same thing about an environmental organization that's bringing a lawsuit, and those claims have been held to fail for lack of standing if there's no direct interest in the particular area of the environment that the environmental organization is focused on. Yes, but those cases seem to me to be really problematic for you, because if somebody from the Sierra Club uses a trail and enjoys a wilderness area, those folks have been found to have standing. It doesn't take much, and this is a person whose career is not only studying but also treating patients with these very drugs. Why isn't that enough? Your Honor, it's not enough because he can't show that anything is going to change about his career and his practice as a result of this citizen petition. So now you're going to that it's speculative? Correct. Okay. That's right, Your Honor. It's highly speculative, and any effect on his practice would depend on the actions of many people who are not before the court, and this court and the Supreme Court have said repeatedly that when you base standing on that set of speculation, on the independent actions of third parties not before the court. Okay, so he's not a third party. He's the guy, right? And that's what I'm trying to get you to grapple with. So if the FDA says, hey, undertakes these studies and comes back and says, no, we're going to reaffirm that these are safe, that might affect his practice, his clinical practice. If they say two of them aren't safe, of course this is all hypothetical, maybe it would affect his practice in a different way, but it's hard to imagine that if his career is studying this area and treating this patient population, that either answer wouldn't affect his practice. Your Honor, the answer would affect his practice only at a very general level, and the injury has to be concrete and particularized, not some sort of general effect on his practice at a very abstract level. And I would point, Your Honor, to the Second Circuit's decision in NRDC versus FDA, which is where the question was whether NRDC had standing to compel the FDA to finalize its regulation of two different drugs. And the Second Circuit held that NRDC did have standing as to one of the drugs because its members were personally exposed to it, but that NRDC did not have standing as to the other drug because no evidence of personal exposure was alleged and the claim was attenuated. I think it's a really important and interesting analysis because all of the ten substances we're talking about are approved and are on the market, and his complaint says, my patients are exposed to these drugs. They're not in the preapproval process. So why is it attenuated? Well, Your Honor, I don't think he's basing his claim to standing on the fact that his patients are exposed to the drugs. He's not raising a third-party standing claim here. I mean, for Dr. Kripke to have standing, he would need to show that. So one of his claims, I'm not trying to interrupt, but he's alleging it several different ways, and one of the ways is just that he thinks it's a public and personal safety hazard because he, and I'm going to unfairly summarize, but our communities are awash with these prescription drugs he finds dangerous, and he thinks people are falling asleep behind the wheel and whatnot. What about that? Well, the asleep behind the wheel, the public safety rationale and the idea that people are going to fall asleep behind the wheel, I mean, that's an argument that anyone in the United States could make to try to get standing to raise this challenge. I mean, or at least anyone who has a driver's license here could say that they're at risk of getting hit by someone who's taken a hypnotic drug. So I think the cases say that the injury needs to be concrete and particularized. It needs to be personal to him, not just a concern with public health and public safety. And I would say, you know, he also says that he'll get recruited to conduct studies if the petition is granted. That also depends on a whole chain of speculation and activities by others who are not before the court. It depends on the outcome of the petition. It depends on the idea that manufacturers would choose to conduct post-market studies, and it depends on the speculation that manufacturers would actually recruit Dr. Kripke to conduct those studies. And, you know, I think I addressed Your Honor's question about his professional interest in the substantive results of these studies. I just don't think that's concrete and particularized enough. I'd like to say a few words on the merits if the Court will indulge me. I think first on the agency action unlawfully withheld claim, this is the claim that the response within 180 days did not comply with the regulation. I think the two courts to address that issue have squarely rejected it, rejected Dr. Kripke's claim there. This is BioVail Court versus FDA and Hill Dermacerticals versus FDA. And as those courts held, the regulation by its plain terms does not impose any degree of detail that FDA needs to say in order to give an adequate tentative response to a petition. And on to the unreasonable delay claim. So I think here it's important to keep in mind that this was a complex petition. This was a petition that was more complex than the average petition that FDA receives. This is one of many petitions. There are hundreds of petitions currently pending in FDA's Center for Drug Evaluation and Research. And this petition has only been pending for the last 31 months, which is a very short time for a petition like this to be pending. And despite the complexity of this petition, despite the fact that it's cited more than 100 different references, all of which FDA was required to review before coming to a final conclusion on this, Dr. Kripke chose to file this lawsuit almost instantly. He filed it within a month after the 180-day time for issuing a tentative response had expired. So when the district court saw this case, seven months had expired since the petition had been filed. Under this court's clear precedent, in a community voice decided late last year, seven months is so far under the range of unreasonable that it was clearly appropriate for the district court to decide that question on a motion to dismiss. In a community voice, this court drew a line between delays of about eight years and delays of only about a few months or a few years. And delays on that latter side of the line are reasonable, and delays on the eight-year side of the line are unreasonable. And, of course, the analysis has to be influenced by how complex the petition is. But here, the complexity of the petition points strongly towards the delay being eminently reasonable. The court doesn't have any further questions. Questions, Judge? No. I don't think so. Thank you for your argument. Questions? Counsel, would you address the reasonableness of the delay? Yes. I think that our allegation was not that the FDA was required to come to a final regulation on every single element of his petition at the time that we filed the case. What we alleged is that the case or that the petition was being completely ignored, and based on what we could tell from the public record, we could make the inference that nothing would happen on the petition, even first steps towards regulations for years. And it turns out we were correct on that. Nothing has happened in 31 or 32 months since it's been filed. No request for information, no gathering of expert panels, no collection of data. And I would also disagree on two things that counsel said about the 100 references. First, the FDA was required by statute to keep itself aware already, without the petition being filed, of post-approval safety information, particularly on sleeping pills, which are the single most prescribed psychoactive medication in the United States. The FDA should have known all of these things already when he filed this petition. Secondly, I disagree that the FDA, to take the initial tentative steps, needed to review 100 different references. Dr. Kripke's petition and the public health should not suffer because he was thorough with his petition. In particular, the summaries and the meta-analyses by other physician associations, the American Geriatric Society and the American College of Physicians, they looked already at all of the studies. They came to a conclusion drawn from those, and that conclusion is that the indications for these drugs are really, really off. And so I think, and also this reasonableness, the counsel was saying things that are not on the record. Complexity is something that's a factual question, and I disagree that all of the petition was complex. I think the decision that there should be more study and a REMS procedure should occur, and that a dear doctor letter should be issued reminding doctors of the dangers of using this off-label, is not something that was a complex determination. And finally, the evidence of competing priorities were simply not in the record. What was in the record would have to be accepted as true, as this is causing hundreds of thousands or contributing to hundreds of thousands of deaths per year. It's common sense that a lot of what the FDA is doing does not have that priority. And, in fact, few things do have such a high priority. And then I want to just say one more thing about standing. Dr. Kripke believes the petition will result in changes to the labeling and the number of people who take sleeping pills. Dr. Kripke is a direct competitor of sleeping pills. He provides specialist physician services to individuals who have insomnia. I think there can be few cases that are more direct than that, and it's certainly not a case that anyone can allege if this petition is granted, I will economically benefit because I'm a competitor and it will be a harm to my competitors if they are properly regulated. So that's a very direct one, and it's certainly more direct than what this court did recently, which said that an aesthetic interest in a Japanese manatee is enough for standing. Certainly anyone can allege an aesthetic interest. Only Dr. Kripke and a few others can allege an interest that is that direct. This petition is granted. It will help me in my competition with sleeping pills. You're out of time. Counsel, thank you for your argument. Thank you both for your argument. We'll take that case under advisement.
judges: D.W. Nelson, Christen, Shea